John WOODFORK, Plaintiff-Appellant,

v.

MARINE COOKS & STEWARDS UNION
et al., Defendants-Appellees.

No. 78–1324.

United States Court of Appeals,
Fifth Circuit.

April 17, 1981.

Robert O. Homes, Jr., Metairie, La., for plaintiff-appellant.

Dodd, Barker, Boudreaux, Lamy & Gardner, C. Paul Barker, New Orleans, La., Ernst & Daniels, Richard Ernst, San Francisco, Cal., for defendants-appellees.

Before TJOFLAT, RUBIN and TATE, Circuit Judges.

TJOFLAT, Circuit Judge:

In this federal diversity case we must decide whether federal law, under either the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381 (1976), or § 301 or § 302 of the Taft-Hartley Act, 29 U.S.C. §§ 185 and 186

(1976), preempts a merchant seaman's state-law claim that he is entitled to pension benefits. The district court determined that ERISA preempted the claim and accordingly dismissed the case. We think the district court misconstrued ERISA's preemption provision in making that determination and therefore reverse and remand the case for further proceedings.

## I

### The Facts

In 1964, John Woodfork, a member of the Seafarers' International Union and a participant in its pension plan, The Pacific District Pension Fund (the Pension Plan), was involved in an altercation aboard ship. Disciplinary proceedings were initiated against Woodfork and resulted in reduction of his union seniority status to zero. With zero seniority, Woodfork was unable to secure work with employers signatory to the Pension Plan. Since credit toward a pension was based on work for such employers, Woodfork's participation in the Pension Plan effectively ended with his loss of seniority.

At the time of his seniority reduction, Woodfork had accumulated 16 years of credit toward his pension. Had Woodfork been 65 years of age and "retired" from marine employment, this amount of pension credit would have entitled him to a "reduced pension" under the terms of the Pension Plan then in effect. Woodfork, however, was only 57 years of age and thus did not qualify for reduced pension benefits in 1964.

The minimum age for pension eligibility was lowered to age 62 in 1965; in 1969, after Woodfork attained that age, he went to his union office to inquire about applying for a pension. Representatives of the union advised him that he was ineligible for pension benefits because he had not accumulated 90 days of pension credit "during the 24-month period immediately preceding his application for his pension," as required by the terms of the Pension Plan. Record, Exhibits Volume, D–1, at 10. Apparently relying on this advice, Woodfork neither submitted a pension application nor initiated any other sort of direct contact with the Pension Plan office.

In 1974, after ERISA was enacted, Woodfork hired an attorney to investigate his pension eligibility. The attorney sent a letter to the union on December 27, 1974, requesting various information he felt was needed to determine "what rights, if any, Mr. Woodfork has to obtain a pension, or the alternative [sic], to obtain a refund of whatever monies were deposited in the pension fund by either himself [sic] or any of his employers." Record, Exhibits Volume, D–23. The attorney sent a second letter, dated February 6, 1975, which stated that it should be treated as an application for pension benefits. *Id.* at D–24. The Pension Plan began processing the February letter as an application, but before it reached a final decision, Woodfork filed this lawsuit alleging entitlement to pension benefits. Shortly thereafter, the Pension Plan notified Woodfork that it had found him ineligible for benefits.

## II

### The Complaint and the Proceedings in the District Court

Woodfork's complaint alleged that the Pension Plan refused to pay him benefits to which he was entitled; jurisdiction was premised on the civil enforcement provision of ERISA, 29 U.S.C. § 1132 (1976), and on sections 301 and 302 of the Taft-Hartley Act, 29 U.S.C. §§ 185 and 186 (1976). The action was filed in the Eastern District of Louisiana, where Woodfork lived.

The officers of the Pension Plan were located in San Francisco, and the plan administrator and the plan trustees also resided in California.[1] Defendants moved under

---

1. In addition to the Pension Plan, Woodfork sued the Plan's administrator, William H. Clark, and the Marine Cooks & Stewards Union. Service was accomplished on the Pension Plan and Clark under the Louisiana long arm statute, and they did not question the district court's jurisdiction over their persons. Woodfork never obtained service of process on the

the venue provisions of ERISA and the Taft-Hartley Act to transfer venue to the Northern District of California.[2] To avoid the possibility that his suit would have to be prosecuted in California,[3] Woodfork amended his complaint to substitute a state claim of pension entitlement for the federal claims. In the amended complaint, jurisdiction was premised on diversity. Since in a diversity case venue lies in any district in which the plaintiff resides, the defendants were compelled to withdraw their challenge to venue, and the case proceeded to trial.

A pretrial stipulation set forth several contested legal issues, which, for purposes of this appeal, may be reduced to the following question: whether the amended complaint, relying exclusively on California law, stated a claim on which relief could be granted. According to defendants, the complaint did not state such a claim because: (1) state law was preempted by ERISA, and by sections 301 and 302 of the Taft-Hartley Act; and (2) assuming that state law was not preempted, Woodfork had no right under California law to receive benefits in contravention of the specific and unambiguous terms of the pension plan.

The case came to trial before the court and, after post-trial briefing, the district court dismissed the cause. The reason for the dismissal was explained as follows:

> [T]he 1974 Employee Retirement Income Security Act (ERISA) preempted the field and superseded state law. The 1974 Act is applicable to all causes of actions [sic] arising after its effective date, January 1, 1975. Since application for benefits and the denial of them occurred subsequent to the effective date of the statute, and since Plaintiff alleged only a

state law claim and state law was inapplicable, the claim [is] dismissed.

Record, Vol. I at 124 (citations omitted).

Plaintiff moved for reconsideration, or alternatively, to amend the complaint to restore the ERISA and Taft-Hartley claims. The court denied the motion and plaintiff brought this appeal.

Woodfork's basis for this appeal is that ERISA did not supersede his state law claim because that claim was covered by two statutory exceptions to ERISA's preemption provision. If we find, however, that ERISA does preempt the state law claim, Woodfork asks that we instruct the district court to grant his motion to amend the complaint to restore his federal claims.

In asking us to affirm, defendants urge that the district court correctly determined that ERISA preempted the state law claim. Alternatively, defendants contend that the district court's decision should be sustained because (1) sections 301 and 302 of the Taft-Hartley Act preempt the state law claim; and (2) even if applicable, no theory of California law supports Woodfork's position that he is entitled to a pension.

### III

### ERISA Preemption

The Employee Retirement Income Security Act was enacted on September 2, 1974; the effective date of the provisions of the Act relevant to this appeal is January 1, 1975. One of the purposes of ERISA is "to protect ... the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies ... and ready access to the Federal courts." 29 U.S.C. § 1001(b) (1976).

---

union, and the union has never appeared in the case.

**2.** Venue in an ERISA civil action is located "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. . . ." 29 U.S.C. § 1132(e)(2) (1976). Venue for an action under Taft-Hartley is governed by 28 U.S.C. § 1391(b) (1976), which provides that venue

can lie in either the district where all defendants reside or where the claim arose.

**3.** Woodfork contends that the costs of prosecuting the cause in the Northern District of California are prohibitive, given the relative financial insignificance of the relief he is seeking.

ERISA's drafters felt that this purpose would best be served by creating a comprehensive federal scheme of pension plan regulation that preempted all state regulation. The need for preemption was explained by Senator Harrison A. Williams, one of the principal authors of ERISA, as follows:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions . . . are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.

[1974] U.S.Code Cong. & Adm.News 4639, 5188.

The substantive provision of ERISA accomplishing preemption of state law is 29 U.S.C. § 1144 (1976), which reads as follows:

> (a) Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . . This section shall take effect on January 1, 1975.
>
> (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

Under section 1144, then, the question whether ERISA preempts California common law turns on whether subsection (b)(1) applies to Woodfork's claim. Subsection (b)(1) removes from the supercession requirement (a) causes of action which arose before January 1, 1975 (the "cause-of-action exception") and (b) acts or omissions which occurred before January 1, 1975 (the "act-or-omission exception"). Woodfork presents a two-fold argument that ERISA has no application in his case: (1) his cause of action arose before January 1, 1975; and, alternatively, (2) that his cause of action is based in part on an act or omission that occurred prior to that date.

■ We agree with Woodfork to this extent: we think there is an unresolved question of fact, and of law, whether his cause of action accrued before January 1,

1975, and we therefore remand to the district court to determine when the cause of action arose. We disagree, however, with Woodfork's second contention; we hold instead that a cause of action arising after January 1, 1975, is an ERISA claim even though it may be founded in part on earlier occurrences.

### A.

We first consider why the "act-or-omission" exception does not preclude ERISA preemption of a claim that arises after the January 1 effective date. As we read his brief, Woodfork argues that the Pension Plan's adoption, before 1975, of the pension eligibility standards he challenges, was an act or omission within the statutory meaning of those terms. An only slightly different way of characterizing pre-ERISA events is to say that when Woodfork attained age 62 in 1969, the challenged eligibility provisions *acted* automatically to deny him his pension. *See Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307, 312 (8th Cir. 1979). Under either characterization, Woodfork would argue that his cause of action is based substantially on an act or omission occurring before January 1, 1975, and that ERISA's preemption provisions do not apply. The Pension Plan, however, contends that the only act or omission material to Woodfork's claim is its denial of the pension, which occurred after January 1, 1975, and that neither exception of ERISA's preemption provision applies. Thus, the parties to this appeal invite us to decide this case, in part, by defining precisely the term "act or omission."

■ Congress did not, either by express statutory definition or by ERISA's legislative history, provide guidance on the meaning of the term "act or omission." *See Bacon v. Wong*, 445 F.Supp. 1189, 1192 (N.D.Cal.1978). We must therefore divine specific statutory meaning from general statements of Congressional intent and the rules of statutory construction.

■ A basic principle of statutory construction is that "a statute should not be

construed in such a way as to render certain provisions superfluous or insignificant." *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 406 (D.C.Cir.1976). *See also United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). If we are to assume, as Woodfork contends we should, that ERISA does not preempt a cause of action if its factual basis includes acts or omissions occurring before 1975, the cause-of-action exception would be superfluous. This is because any cause of action arising before 1975, by definition, must be based on acts or omissions occurring before 1975. Thus, the cause-of-action exception would have independent significance only if it applies in contexts to which the act-or-omission exception is inapplicable. We think it is possible to construe the statute in a way that achieves this result.

A cause of action, in common legal parlance, is a state of facts which would entitle a person to sustain an action and to seek a judicial remedy on his behalf. *See Fraticelli v. St. Paul Fire & Marine Insurance Co.*, 375 F.2d 186, 188 n.6 (1st Cir. 1967); *Swankowski v. Diethelm*, 98 Ohio App. 271, 129 N.E.2d 182, 184 (Ohio 1953). ERISA preempts state law, however, whether or not it provides the legal basis for a cause of action. For example, ERISA's preemption section covers pension-related state administrative proceedings and criminal prosecutions, which certainly cannot be characterized as causes of action. See 29 U.S.C. § 1144(c)(1) (1976); *Azzaro v. Harnett*, 414 F.Supp. 473 (S.D.N.Y.1976) (preemption of state administrative agen-

cy's regulation of pension disclosure), *aff'd*, 553 F.2d 93 (2d Cir.), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).[4] In such contexts, the cause-of-action exception is simply inapposite and only the act-or-omission exception is applicable. We think a reasonable construction of the statute is to confine use of the latter exception to acts or omissions that set in motion legal proceedings other than causes of action.

This interpretation of the statute is consistent with meeting a basic legislative goal of ERISA: allowing a participant to bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B) (1976). It is reasonable to assume that Congress desired to provide this federal court access as quickly as possible. Nevertheless, Congress did not choose to open the federal forum to non-preempted state claims. *Martin v. Bankers Trust Co.*, 565 F.2d 1276, 1278 (4th Cir. 1977). Rather, actions brought in the federal forum were to be those "regarded as arising under the laws of the United States . . . ." [1974] U.S.Code Cong. & Adm.News 5188 (Comment of Senator Harrison Williams).

A state claim not preempted by ERISA obviously does not arise under federal law and the federal forum is thus, absent diversity, closed to it. *See Martin v. Bankers Trust Co., supra.* Thus, our acceptance of Woodfork's contention that causes

---

4. Judge Rubin, in note 2 of his dissent, writes that the majority opinion "do[es] not consider the right to initiate a legal proceeding a cause of action." 642 F.2d 978. This, we think, mischaracterizes our opinion. While we agree with our dissenting brother that a private litigant's right to initiate a legal proceeding is always a cause of action, we do not think the term "cause of action" is descriptive of a state or local governmental body's right to initiate an administrative action or a criminal prosecution. The legislative history of ERISA, however, demonstrates that such state regulation of the pension field was to be preempted entirely.

"It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the con-

ference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

[1974] U.S.Code Cong. & Adm.News pp. 5188–5189. Since legal proceedings initiated by the state are not causes of action, it is reasonable to conclude that Congress included the acts-or-omissions language to preempt such legal proceedings and not civil actions such as Woodfork's.

of action are excepted from preemption whenever they involve any pre-1975 acts or omissions could deny many individuals the right to sue in federal court.[5] This would conflict with the goal of providing access to a federal forum for pension plan participants. It would also conflict with Senator Williams' admonition that the preemption exceptions are to be construed narrowly. See *supra*, 642 F.2d at 970.

Two further points warrant discussion. First, we think we must consider why, if Congress wished to accord participants access to a federal forum as soon as possible, it denied such access to those individuals whose causes of action arose prior to January 1, 1975. We think the Fourth Circuit answered this question in *Martin v. Banker's Trust Co.*:

> In his brief counsel for [the participant] concedes that he is not charging the defendants with liability for any new duty imposed upon them by ERISA and which did not exist prior to [ERISA], but argues that ERISA grants him a federal forum to determine his rights to benefits under the plan [where his cause of action arose before January 1, 1975]. We reject this argument for we agree with the defendants that to place such a construction upon the statute would raise a serious constitutional question.

567 F.2d at 1279.

Without deciding whether Congress could have constitutionally provided a federal forum for causes of action arising before ERISA's enactment, we agree with the Fourth Circuit that Congress's concern in 1974 over the possible unconstitutionality motivated it to deny a federal forum to litigants with pre-existing causes of action.[6]

■ The second point requiring discussion concerns Woodfork's remedies under ERISA. According to Woodfork, ERISA provides him no pension rights, and, thus, if it preempts his state law claim, he is left without a remedy. Since ERISA is a remedial statute that was enacted to fill a void created by ineffective state protection of a worker's pension rights, it is inconceivable that Congress intended the statute to deprive workers of their pensions by taking away existing state rights and offering no federal rights in return. ERISA, therefore, must be interpreted to preserve his state law claim.

Woodfork's view might be persuasive if ERISA in fact failed to replace his preempted state remedy with a federal remedy. In our view, however, ERISA does provide Woodfork with a federal remedy. The reason Woodfork believes it does not is that he looks only to its substantive provisions. The substantive provision dealing with vesting of benefits would make illegal a pension plan's denial of benefits because of a break-in-service, see 29 U.S.C. § 1053 (1976), but that provision does not apply to service breaks, like Woodfork's, that occurred before ERISA's effective date, see 29 U.S.C. § 1053(b)(1)(F) (1976). Since Woodfork's break began in 1964, this substantive provision provides him no protection.[7]

■ This does not leave Woodfork without federal rights, however. As we mentioned earlier, 29 U.S.C. § 1132(a)(1)(B) (1976) provides that a participant in a pension plan can bring a civil action to recover benefits under the terms of his plan. The legislative history of ERISA indicates that

---

5. For example, consider a participant in Woodfork's pension plan who on January 1, 1975, was 55 years of age, and whose employment aboard union ships ended in 1971. Under the terms of the pension plan, he would have to wait until 1982, when he attained age 62, to apply for a pension. In such a case, under Woodfork's reasoning, he would be denied a federal forum when he turned 62 unless he met the requirements for federal diversity jurisdiction.

6. Providing a federal forum for causes of action arising after January 1, 1975 raised fewer constitutional implications, even though it was still possible the cause might be based primarily on events occurring before 1975. See *Hampton Roads Stevedoring Corp. v. O'Hearne*, 184 F.2d 76, 80 (4th Cir. 1950).

7. A second reason Woodfork receives no protection from ERISA's substantive sections is that he failed to earn at least three years of service after December 31, 1970. See 29 U.S.C. § 1053(b)(1)(E) (1976).

this section was intended to create a federal common law concerning pension rights, which would augment the rights created by ERISA's substantive provisions.

> [P]articipants and beneficiaries may bring suit to recover benefits denied contrary to the terms of their plan, *and where such claims by participants or beneficiaries do not involve application of the substantive requirements of this legislation,* they may be brought in either State or Federal courts of competent jurisdiction. *It is intended that such actions will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act.*

[1974] U.S.Code Cong. & Adm.News 5188 (Comment of Senator Harrison Williams) (emphasis supplied). We think in interpreting the terms of a pension plan in a case such as Woodfork's, this federal common law allows a court to interpret a pension plan's terms in light of a worker's pre-ERISA state law rights. Thus, if Woodfork is correct that under California law the Pension Plan would have been required to pay him benefits notwithstanding plan provisions to the contrary, he may, in our view, raise these rights as part of a judicially created body of federal law governing pension entitlement.[8] Having concluded that the "act or omission" exception does not preclude ERISA preemption of Woodfork's claim, we turn to the question whether his cause of action arose after January 1, 1975.

### B.

Woodfork contends, as he must, that his cause of action arose before January 1, 1975. The district court, however, found that Woodfork's claim did not become actionable until after his application was denied. Since the denial occurred in March of 1975, the district court dismissed the suit. In reaching its decision, however, the district court did not consider whether any event occurring prior to 1975 might have triggered Woodfork's right to sue the Pension Plan.

■ Whether a cause of action accrued before January 1, 1975, is a question of state law. In this case it is agreed that California law is controlling; thus the question is whether Woodfork could have brought suit in a California court prior to his submission of a formal application for

---

**8.** Judge Rubin takes issue with our conclusion that ERISA, in some circumstances, may absorb pre-ERISA state law. Apparently, Judge Rubin agrees with us that ERISA should not be construed to deny a worker a pension to which his pre-ERISA employment would have entitled him under pre-ERISA state law, but concludes that "the protection of federal law will [not] be less adequate than the protection of prior state law." 642 F.2d 980. Therefore, incorporation of state law is unnecessary.

Woodfork's situation belies Judge Rubin's prediction that federal law preserves every worker's pre-ERISA pension rights. To understand why this is so, we must indulge in two assumptions: first, that Woodfork is correct that he would have been entitled to a pension under California law; and second, that Woodfork's cause of action arose after January 1, 1975. Given our first assumption, if Woodfork had applied for a pension before January 1, 1975, and then sued in state court when the Pension Plan denied him benefits, he would have been awarded his pension. But Woodfork did not apply for benefits in 1975, and, consistent with our second assumption, ERISA preempts state law and therefore the common law of ERISA determines Woodfork's pension

entitlement. It would be appealing to read federal common law to assist any worker in Woodfork's position. To do so, however, without reference to a worker's pre-ERISA state rights and thus in every case involving a pre-ERISA service break, would thwart Congress' expressed will.

Congress, in ERISA's substantive sections, provided that service breaks occurring *after* ERISA's effective date would not cause an individual to forfeit his employment credit. 29 U.S.C. § 1053 (1976). From this, we know that Congress was aware of the service-break problem and wished to ameliorate the problem prospectively only. For us to give retroactive application to these rules in the guise of federal common law would thus be inconsistent with the legislation Congress enacted. For these reasons, we are not willing to hold that Woodfork is assisted by federal common law if that common law does not absorb pre-ERISA state law with regard to pre-ERISA employment. We think Judge Rubin would agree with this, but if he does agree, his theory would deprive Woodfork of a pension whether or not he would have been entitled to one under pre-ERISA California law.

benefits to the Pension Plan on February 6, 1975. If so, Woodfork's cause of action would have accrued before ERISA's preemptive date. This question was not briefed by either party at the district court level.

We think Woodfork might be able to make plausible arguments that his claim against the Pension Plan ripened earlier than the district court held. One argument, suggested on this appeal, is based on facts dating back to 1968, when union officials informed Woodfork that he was ineligible for pension benefits. Woodfork contends that this was a denial of benefits, but the Pension Plan answers that it could not have been, since union officials had no authority to act for the Plan. The issue of what authority the union officials may have had, however, was not litigated below.

Ordinarily, we would expect a plaintiff in Woodfork's position to have litigated the question fully in the trial court. It is unclear, however, from the manner in which the issues were framed in the district court, whether Woodfork was put on notice as to the critical importance of when his cause of action accrued and, if so, whether such notice was given early enough in the proceedings to enable him to have a fair opportunity to present evidence and advance his arguments. We therefore remand the case to the district court to allow Woodfork to litigate whether his state law claim arose before ERISA's January 1, 1975 preemption date.

## IV

### Taft-Hartley Preemption

The Pension Plan contends that Woodfork's state claim is preempted by sections 301 and 302 of the Taft-Hartley Act, 29 U.S.C. §§ 185 and 186 (1976). Thus, even if ERISA does not preempt the state claim the diversity action must, still, in the Pension Plan's view, be dismissed. We first address the question of section 302 preemption.

Section 302(c)(5) of the Taft-Hartley Act, which applies to pension plans negotiated by a union for its members, creates require-

ments which the plan must satisfy before the employer may legally fund it. Among the requirements is that the trust be administered for the sole and exclusive benefit of the employer's employees. At least one circuit has interpreted these words to create a private cause of action, governed by *federal* substantive law, for a beneficiary to sue his pension trust for benefits. *Alvares v. Erickson*, 514 F.2d 156, 164–167 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). *See also* Goetz, *Developing Federal Labor Law of Welfare and Pension Plans*, 55 Cornell L.Rev. 911, 925–931 (1970). The Ninth Circuit has indicated its willingness in such cases to consider whether eligibility requirements, similar to those Woodfork challenges here, are arbitrary, capricious and, thus, unenforceable. This use of section 302(c)(5) to create a federal substantive law of pension eligibility has not been universally accepted, however, and some courts have held that prior to ERISA pension matters were to be governed primarily by state regulation. *Beam v. International Organization of Masters, Mates & Pilots*, 511 F.2d 975 (2d Cir. 1975).

We think the latter approach, as adopted by the Second Circuit, is correct. Although we have not heretofore ruled on whether a claim against a union pension fund is jurisdictionally based on Taft-Hartley, we have, in a similar context, held that a retired pension plan participant's state law action is not preempted by the exclusive jurisdiction of the NLRB. *Connell v. U.S. Steel Corp.*, 516 F.2d 401 (5th Cir. 1975). In reaching that decision, we looked to Taft-Hartley to determine whether Congress intended state trust law to be preempted by the National Labor Relations Act.

Finally, there is an exception to the preemption doctrine for "matters of peripheral concern to federal labor law". The Taft-Hartley Act did not remove all areas of labor law from the purview of state law. Indeed, Congress affirmatively provided that state law govern pension and welfare trust matters . . . . In light of the congressional objective of having

state courts (or federal diversity courts) regulate pension and welfare trust relationships in accordance with state trust law, we hold that the court's incidental construction of a provision of federal labor law to determine if trustees have relied in their decision on an illegal act is not in itself sufficient to divest the court of jurisdiction.

*Id.* at 405 (citations omitted). This quote squarely supports our holding that section 302(c)(5) does not preempt the state law claims.

We next consider the effect of section 301 on Woodfork's claim. Section 301 creates a federal common law to be used in interpreting the terms of a collectively bargained contract. The Pension Plan contends that because the terms of pension eligibility are set in a collective bargaining contract, the federal law created by section 301 governs. *See Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1977). We think what we said in *Connell,* however, applies with as much force to section 301 as it does to section 302, and we decline to hold that Taft-Hartley preempts state regulation of this area of pension law.

## V

### The Motion to Amend

Assuming ERISA preempts Woodfork's state claim, the case is not necessarily concluded. Following dismissal of his diversity claim, Woodfork moved the court to allow him to amend his pleadings to restore his ERISA claim, which he had earlier withdrawn in order to preserve venue in Louisiana. If necessary to his motion, Woodfork agreed to have the case transferred to California.[9] The district court refused him this

opportunity, however, explaining as follows:

Finally, plaintiff · sought to amend his complaint [to restore the ERISA claims] to allege a federal cause of action in order to allow transfer of the case to California. Plaintiff chose to avoid such a transfer initially and having had a trial on the merits sought to change the cause of action. The Court saw no purpose in this. If plaintiff wishes to seek a federal remedy, he may file an action in the appropriate forum, but the state law claim asserted herein is at an end.

Record, Vol. I, at 125. Woodfork now asks that if we find ERISA preemption of his state claim, we instruct the district court to allow him to amend his complaint to restore the federal claim.

Rule 15(a) of the Federal Rules of Civil Procedure, which governs amendments to pleadings, reads in pertinent part as follows:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party: and leave shall be freely given when justice so requires.

Woodfork's amendment should have been accepted, then, if the district court found that justice so required. The district court did not, however, so find, and we can reverse only if the district court denial of the

---

**9.** The ERISA venue provisions state that venue is located "in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found." 29 U.S.C. § 1132(e). Because the Pension Plan is administered, the defendants reside, and the breach took place, in California, Woodfork's lawyer apparently concluded that Louisiana was an improper venue for Woodfork's ERISA action. In a relatively recent decision, however, the Ninth Circuit held that for ERISA-venue purposes, a defendant is found wherever personal "jurisdiction is properly asserted over

the [defendant]." *Varsic v. U.S. District Court for Central District of California,* 607 F.2d 245, 248 (9th Cir. 1979). The Pension Plan has conceded in this litigation that the district court had jurisdiction over its person. Thus, if *Varsic* is adopted as the law of this circuit, the district court was a proper venue for the ERISA claims. Since this venue issue has not been briefed on this appeal, and, in any event, would be irrelevant if Woodfork's cause of action arose before 1975, we do not at this time determine if *Varsic* states the law of our circuit.

motion to amend was an abuse of discretion. *See Watson v. Employers Liability Assurance Co.,* 202 F.2d 407 (5th Cir. 1953), *rev'd on other grounds,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954).

■ On consideration, we hold that the district court's refusal was an abuse of discretion. Initially, we note that the court unconditionally accepted Woodfork's first motion to amend, which requested dismissal of his federal claim. Later, the court specifically, recognized that the dismissal was without prejudice: "If plaintiff wishes to seek a federal remedy, he may file an action in the appropriate forum...." Record, Vol. I at 125. If Woodfork was free to bring a new ERISA action, there simply was no good reason to deny him the right to amend to add his ERISA-based claim.

The district court's rationale for denying Woodfork's amendment was apparently two-fold. First, the sole reason Woodfork dismissed his federal claim was to change the action's jurisdictional base, and, thus, the applicable venue requirements; in the court's view, Woodfork cannot now complain that he has been hoisted by a procedural petard of his own making. Second, the Pension Fund has already been subjected to an unnecessary trial and should not now be subjected to still further proceedings in Louisiana.

We are unpersuaded by the court's rationale for several reasons. The first is that the Pension Plan did not assert the preemption grounds until the eve of trial, apparently too late to postpone the commencement of the trial. Presumably, had the preemption issue been raised earlier, there would have been no trial, at least not of a diversity claim. Thus, by its delay in raising its argument, the Pension Plan must share the blame for the way the case came to trial. Second, Woodfork's attorney's attempt to preserve venue in Louisiana by changing the jurisdictional basis from federal question to diversity of citizenship was consistent with his obligations to his client, and does not, in our view, sully his hands to such an extent that the district court should have denied his client the opportunity to litigate his claim in the pending case rather than in a subsequent proceeding.

A third reason is more complicated. We have reviewed several cases in which diversity was alleged as the jurisdictional ground for colorable state claims preempted by federal law. In these cases, the courts, rather than dismiss, have applied federal substantive law. *See Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1977) (diversity action in which Taft-Hartley preempted state law claims). We think this course, by preserving a case for substantive decision rather than dismissing it on a technicality of the pleadings, can preserve judicial resources and be fair to all parties. It is a course that, in our view, courts should ordinarily follow, even *sua sponte,* and which the district court might have followed here.

Given the procedural history of this case—Woodfork requesting dismissal of his federal claim and the Pension Plan responsively dropping its venue challenge—we cannot say that the district court abused its discretion in not considering on its own initiative the possible federal law claim. When faced with Woodfork's motion to amend, however, the court should have considered, as one factor in the exercise of its discretion, its power to consider the federal claim.

We thus think that the district court, if correct in holding that ERISA preempts Woodfork's state law claim, should have granted his motion to amend the pleadings to restore his federal claim. If on remand the court finds, consistent with this opinion, that ERISA preempts the state claims, we instruct it to grant Woodfork's motion to amend his complaint. The question of venue, and how it would affect the amended complaint, is one for the district court to determine, if it arises.

## VI

### Substantive Rights

■ The Pension Plan's final argument on this appeal is that Woodfork has no viable claim to pension entitlement under either state or federal law. Thus, the Plan

argues that if Woodfork manages to negotiate his way through the case's many procedural obstacles, we should nonetheless uphold the district court's dismissal. We think this would be inappropriate for three reasons. First, we do not know whether Woodfork's claims will be litigated under ERISA or state law. While we have indicated that a court, under ERISA, could apply state law, the court must ensure, before doing so, that the state law being applied does not conflict with federal policy considerations reflected in ERISA. *See Rehmar v. Smith,* 555 F.2d at 1368. Consequently, we are uncertain at this stage what law is to be applied. Second, if ERISA provides the law of this case, it may be necessary to transfer venue to the Northern District of California, where appeal lies to the Ninth Circuit. Third, the question of initial adjudication of Woodfork's claims should, in the normal course, take place in the district court, and if a subsequent appeal to this circuit results, we expect to be guided by the district court's reasoning. We, therefore, reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

I respectfully dissent. With the best of intentions, the majority has developed a life-support system designed to prolong the life of this litigation. Believing that the district court correctly denied plaintiff's counsel yet another chance to manipulate venue and that we do not discharge our appellate function properly by supplying a new theory to prolong the life of this moribund suit, I would let the case expire without prejudice to its possible resurrection if the plaintiff presents a tenable legal theory in a proper forum.

Woodfork filed this suit, in the Eastern District of Louisiana, where he then lived, asserting federal question jurisdiction arising out of ERISA, 29 U.S.C. § 1132 *et seq.,* and the Taft-Hartley Act, 29 U.S.C. § 141 *et seq.* His experienced counsel filed a complaint that sought skillfully to plead an ERISA claim. Because all of the defendants resided in California, the district court properly ordered a transfer of venue to the Northern District of California. *See* 28 U.S.C. § 1391(a). This order led to plaintiff's first maneuver: to avoid having to prosecute his suit in California, he amended his complaint, eliminating his federal claim and substituting a claim in diversity under California law. The venue of his diversity claim properly lay in Louisiana where the plaintiff resided. 28 U.S.C. § 1391(b). The defendants countered by urging that the plaintiff had no state law claim because only federal law (e. g. ERISA) was applicable. The case proceeded to trial on the California claim.

Relying on the state law preemption provisions of ERISA, the district judge dismissed Woodfork's state law claim. *See* 29 U.S.C. § 1144. The court held that Woodfork's claim arose under federal law because his cause of action did not arise until after the effective date of ERISA, January 1, 1975. *See* 29 U.S.C. § 1144(a). The dismissal adjudicated only the state law claim, and, of course, did not affect the latent federal claim that Woodfork had not presented to the court. The losing plaintiff then sought to amend his complaint in order to restate his federal claim. The district court declined to permit plaintiff to reassert his previously abandoned claim. Plaintiff now contends that the district court was in error in deciding that he had no state law claim and, in the alternative, that it improperly denied him leave again to amend his complaint after trial on the merits.

My brethren remand this case for two purposes: the district court must redetermine whether Woodfork's cause of action arose before January 1, 1975, and must permit the plaintiff to amend his complaint to reurge his federal claim. I think that the district court acted correctly, indeed wisely, on both issues.

I.

Section 1144 of ERISA provides that the statute

shall supercede any and all State laws [except] with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975. 29 U.S.C. § 1144. State law thus applies to Woodfork's claim only if his cause of action arose before January 1, 1975, when ERISA did not yet protect employee pension rights.[1] If his claim arose before the preemption date, the claim may be brought in federal court only on the basis of diversity jurisdiction. *Cf. Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977). If, as the district court held, his claim arose after the preemption date, then state law cannot provide a basis for recovery. The definitive question, we are agreed, is when Woodfork's cause of action arose.[2]

My brethren state that Woodfork "*might* be able to make *plausible arguments* that his claim against the Pension Plan ripened earlier than the district court held" for purposes of California law. 642 F.2d at 974 (emphasis added). This is an oblique recognition, later stated candidly, that plaintiff failed to make these arguments in the district court. My brethren excuse this failure because Woodfork *may* not have been "on notice as to the critical importance of when his cause of action accrued" or may not have had a fair opportunity to present his response on the preemption issue, even though the district court allowed both sides a full opportunity to brief all issues after testimony was taken.

It is not the duty of the trial court to ferret out every possible theory on which a party might recover and to put the party on notice of the facts that might support such a theory. As an appellate court, we do not consider issues that the parties have failed to raise in the trial court, except when a miscarriage of justice might result. *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724 (5th Cir. 1980); *Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976). Plaintiff's potential arguments are, at best, "plausible;" in the absence of compelling evidence that the district court erred, I can detect no miscarriage of justice to the plaintiff (although I fear that the imposition of a second Louisiana trial on defendants may well be unjust).

It is even more difficult to understand our decision in light of the facts. Woodfork was disciplined 17 years ago, in 1964, when he was 57. He reached early retirement age, 61, in 1969, and full retirement age, 65, in 1972. Nine years after he had inquired into his early retirement rights, only to be rejected, and three years after he reached full retirement age, he hired a lawyer. With the assistance of counsel, Woodfork filed a belated application for benefits with the defendants. In February, 1975, he filed suit asserting jurisdiction under ERISA. The defendants rejected his application in March, 1975, six years ago. All of the operative facts, except the actual rejection of Woodfork's belated application, occurred long before suit was filed, raising the suspicion that any suit not based on defendants' most recent rejection is time-barred under whatever California limitation period is applicable. Any cause of action based on the 1975 rejection is, as we all agree, preempted under ERISA. I doubt that we are doing even Woodfork a good turn by attempting to resurrect a patently weak claim.

## II.

I have equal difficulty understanding why we remand the issue of when the cause of action arose to the district court. My

---

1. I agree with the majority that Sections 301 and 302 of the Taft-Hartley Act, 29 U.S.C. § 301, 302, do not preempt state law protection of employee pension rights prior to the ERISA preemption date.

2. My brethren attempt to account for the apparent redundancy of "cause of action" and "act or omission" by stating that "an act or omission" leads to "legal proceedings other than causes of action." 642 F.2d at 971.

They do not consider the right to initiate a legal proceeding a cause of action. A cause of action, however, is not a type of proceeding, but a right to relief in some form. It is impossible to differentiate a "cause of action" and an "act or omission" in this fashion. The two phrases may be tautologous. However, all we need decide at present is that there was no pre-1975 "act or omission" that did not create a "cause of action."

brethren state that there is "an unresolved question *of fact*, and of law, whether his *cause of action* accrued before January 1, 1975," justifying a remand. 642 F.2d at 970 (emphasis added). Plaintiff, however, has not contended that he proffered any evidence at the trial that was refused by the district court or that he has any additional facts to offer. We are left, therefore, with a pure question of law. Courts habitually decide when a cause of action arises on the pleadings, without requiring that the facts be established through the trial process. *See, e. g., Anisgard v. Exxon Corp.*, 409 F.Supp. 212 (E.D.La.1975).

It seems to me that my brethren are merely inviting the district judge to give a second opinion. If he was wrong in holding that Woodfork's claims arose after January 1, 1975, he should be reversed. However, I find no error in his ruling and my brethren are unwilling explicitly to declare any misapprehension. More important, the district judge is not likely to think that he was in error unless we instruct him; we will have accomplished little if he reaffirms his earlier decision, leading to an appeal on the same issue again. We would do better to decide the issue ourselves.

### III.

My brethren also reverse the district court's refusal to allow Woodfork to reurge his claim under ERISA. They have shown why a different district judge might have allowed the amendment, but they have not shown that this district judge abused his discretion in reaching his decision. "When the trial court has had a reason for refusing to allow amendment, this court has left its action undisturbed." *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir. 1967).

The district court had two good reasons. First, Woodfork having previously dismissed his federal claim in order to manipulate the court's jurisdiction, he should not be allowed to maneuver again to the detriment of the defendants. Twice before, this court has stated

    [m]uch of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should the theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1162 (5th Cir. 1979), cert. denied sub nom. *Safeway Stores, Inc. v. Meat Price Investigators Association*, —— U.S. ——, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir. 1967).

This reasoning applies with even greater force to an attempt to assert a new legal theory after trial. Given the legal expense and the judicial resources involved in a trial, plaintiffs should not be allowed to present their claims seriatim, so that the first trial becomes only a preliminary round whenever a plaintiff loses. Woodfork's counsel could properly choose to avoid the effects of the venue statute by dismissing the federal claim, but he could not (and probably did not) expect to escape the consequences of his own decision. The district court certainly did not abuse its discretion in enforcing those consequences.

My brethren reject this rationale on the ground that the Pension Plan did not assert its preemption defense until the eve of trial. They imply that, if Woodfork had known that his state claim was likely to fail, he would have pursued his federal claim. This contradicts my brethren's assertion that there are "plausible arguments" showing that Woodfork's state claim was not preempted (indicating that, even if Woodfork had sufficient time before the trial, he would still have pursued his state claim). Leaving aside this paradox, I see a more fundamental reason for not allowing amendment. If judgment after trial is to have a conclusive effect on litigation, it does not matter when plaintiff discovers he is going to lose. The proper course, in any event, is for plaintiff to request a continuance before trial. Having failed to do so, plaintiff cannot now complain of the district court's refusal to let him try again—at defendants' expense. I would also note

that, while we may permit plaintiff to manipulate the jurisdiction and venue of the federal courts, we are under no obligation to encourage this manipulation by making it risk-free. Indeed, the costs of this very appeal will not fall on the maneuvering plaintiff but on the defendant with whose position my brethren as yet find no real fault.

Second, allowing the amendment would be futile, because the motivation for plaintiff's decision to dismiss his federal claim still remains. If plaintiff restates his ERISA claim, defendants will almost certainly reurge their motion to transfer venue and the district court will be required to grant that motion. The majority's argument that the district court should simply have applied federal rather than state law, while correct under other circumstances, does not alter the fact that venue must be transferred to California. The district court could properly decide, as a matter of equitable discretion, that, if plaintiff wanted to pursue his federal claim, he should bring it in the proper venue rather than forcing the defendants to make another unwarranted appearance in Louisiana. Of course, dismissal on this ground increases the likelihood that plaintiff's claim will be prescribed by the relevant statute of limitations, but I cannot say that the district court abused its discretion in refusing to give this factor controlling weight.

## IV.

Having resurrected Woodfork's federal claim, the majority proceeds to revivify state law as well. While we all agree that federal common law governs interpretation of ERISA, the majority holds that Woodfork's *federal* rights must be interpreted "in light of [the] worker's *pre-ERISA state law* rights." 642 F.2d at 973 (emphasis added). They further state that, if pre-ERISA state law rendered the contractual provision invalid, the federal court should apply state law, rather than enforce the terms of the contract. Although ERISA was intended to preempt state law, my brethren would nonetheless give state law full force as a matter of federal law. Moreover, they would not apply contemporaneous state law, but pre-1975 state law that could not serve as a basis of a cause of action under the statute. (In effect, pre-1975 California law now serves as a cause of action, transformed into a federal claim.)

I see no basis for this incorporation theory. My brethren adduce no legislative history indicating that prior state law should be applied. Incorporation leads to state-by-state variation in the application of ERISA's provisions, many of which are sufficiently complex as to beg for uniform application as a means of elucidation. My brethren argue only that application of state law is necessary to prevent a gap in an employee's rights, on the theory that if an employee's vested rights are of pre-1975 origin, they can be enforced only under the state law that, alone, protected them prior to the preemption date. In their admirable concern to protect employees' rights, my brethren have striven mightily to make hard what, in fact, is easy. Federal common law, of its own force, was intended to provide protection for employees' pension rights, regardless of whether those rights were created before or after the preemption date. Preemption eliminates state law protection, but does not alter the underlying right. We have not been shown any reason why the protection of federal common law will be less adequate than the protection of prior state law. I would hold that federal common law, alone, governs the interpretation of Woodfork's contractual rights.

Some statutes resist even the most determined attempts at clarification. The art of statutory interpretation is not advanced when an already complex statute is laboriously parsed in an effort to breathe continued life into a lawsuit that is *in articulo*. Believing that the district court administered the proper rites, I would affirm his decision.