955 F.2d 41
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert E. GARNER, Petitioner,
v.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY; Director,
Office of Workers' Compensation Programs, United
States Department of Labor, Respondents.
 No. 91-1423.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 23, 1991.
Decided Feb. 21, 1992.
 
 On Petition for Review of an Order of the Benefits Review Board. (89-1769)
 Robert E. Walsh, Rutter & Montagna, Norfolk, Va., for Petitioner.
 
 
 1
 Shannon T. Mason, Jr., Mason & Mason, William C. Bell, Office of the General Counsel, Newport News Shipbuilding and Dry Dock Company, Newport News, Va., for respondent Newport News Shipbuilding.
 
 
 2
 Robert P. Davis, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Joshua T. Gillelan, II, Office of the Solicitor, United States Department of Labor, Washington, D.C., for respondent Director.
 
 
 3
 Ben.Rev.Bd.
 
 
 4
 REVERSED.
 
 
 5
 Before SPROUSE and HAMILTON, Circuit Judges, and HENRY M. HERLONG, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 6
 This case presents the issue of whether a longshore employee who sustains an occupational, noise-induced, monaural hearing loss may be compensated for a monaural loss or must instead have his loss converted into a binaural loss for purposes of calculating his benefits under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901-950 (1988). As a result of his exposure to noise while working for employer, Garner sustained a ratable hearing loss of 0.0 percent in his left ear and 3.75 percent in his right ear, resulting in a 0.625 percent binaural hearing loss.
 
 
 7
 Newport News ("employer") voluntarily paid Garner compensation based on the 0.625 percent binaural loss pursuant to 33 U.S.C. § 908(c)(13)(B) (1988). Garner, however, sought payment of benefits pursuant to the provisions of 33 U.S.C. § 908(c)(13)(A), which provides the formula for calculating benefits for a monaural loss, since the application of that provision would result in a greater award. Under subsection (A), Garner would receive 1.95 weeks of compensation,* whereas he would be entitled to only 1.25 weeks of compensation under the formula used for compensating binaural losses under subsection (B).
 
 
 8
 In its original decision, the Board affirmed the administrative law judge's ("ALJ") determination that Garner was entitled to an award under subsection (A). Sitting in banc on reconsideration, however, a majority of the Board reversed its earlier decision and found Garner entitled to an award under subsection (B). For the reasons which follow, we reverse the Board's decision on reconsideration.
 
 
 9
 In 1984, Congress amended section 908(c)(13) to provide that "[D]eterminations of loss of hearing shall be made in accordance with the guides for the evaluation of permanent impairment as promulgated and modified from time to time by the American Medical Association." See 33 U.S.C. § 908(c)(13)(E). The AMA Guides provide a method for measuring a monaural hearing loss, but also provide a formula for converting a monaural loss into a binaural loss. Relying on the view of the Guides, supported by expert testimony, that hearing is a binaural function, the Board majority found that the formula for calculating monaural loss under subsection (A) could not be used in cases where hearing loss was caused by exposure to noise. The Board majority determined that subsection (A) was intended to address only circumstances where the monaural loss occurred because of a traumatic injury.
 
 
 10
 On appeal, Garner and the Director, Office of Workers' Compensation Programs ("Director") argue that the Board majority erred by ignoring the formula provided by subsection (A) for calculating benefits where there is a ratable loss in only one ear. We agree. Initially, we note our policy of according due deference to the Director's construction of the Act. See Newport News Shipbuilding & Dry Dock Co. v. Howard, 904 F.2d 206 (4th Cir.1990). In that case, we described our function as "simply to determine whether the balance struck by the Director embodies a reasonable interpretation of statutory provisions whose intended meaning is by no means plain." Id. at 210. The views of the Board, however, are entitled to no special deference since it is not considered to be a "policy-making" body. See Potomac Electric Power Co. v. Director, Office of Workers' Comp. Programs, 449 U.S. 268, 278 n. 18 (1980).
 
 
 11
 In the instant case, we find the Director's view of the relevant statutory provisions to be not only reasonable, but in clear harmony with principles of statutory construction. It is well settled that a statute must not be interpreted to render a portion of the statute meaningless or without effect. See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985); Woodfork v. Marine Cooks and Steward's Union, 642 F.2d 966, 970-71 (5th Cir.1981), quoting Zeigler Coal Co. v. Kleppe, 536 F.2d 398 (D.C.Cir.1976). The interpretation of the Board majority runs afoul of this principle by effectively reading subsection (A) out of the statute. Neither the statute nor its legislative history provides any basis for the view that subsection (A) is limited to cases where hearing loss was caused by traumatic injury. Moreover, we see no logical reason for compensating monaural hearing losses differently depending on their cause.
 
 
 12
 We see no irreconcilable conflict between the statute's directive that monaural losses be compensated according to the criteria of subsection (A) and the directive of subsection (E) that determinations of hearing loss be made in accordance with the Guides. The Guides provide the methods employed under the Act for measuring hearing loss, whether monaural or binaural. The statute serves a different function; it provides a formula for determining how such losses should be compensated.
 
 
 13
 Accordingly, the Board's decision on reconsideration is reversed and the ALJ's award of benefits is reinstated but modified to reflect the fact that Garner is entitled to 1.95 weeks of compensation.
 
 
 14
 REVERSED.
 
 
 
 *
 We note that the Board and the ALJ erred in computing the amount of compensation payable under subsection (A). It is not disputed that the correct figure is determined by multiplying the claimant's monaural loss (.0375) by 52. This results in a figure of 1.95