637 F.2d 994
 MISSISSIPPI COAST MARINE, INC., and U. S. Fidelity and
Guaranty Company, Petitioners,
v.
Herman E. BOSARGE and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 78-2375.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 17, 1981.
 
 Paul M. Franke, Jr., Gulfport, Miss., for petitioners.
 Bobby O'Barr, Biloxi, Miss., Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., for respondents.
 Petition for Review of an Order of the Benefits Review Board.
 Before SIMPSON, GODBOLD and THOMAS A. CLARK, Circuit Judges.
 THOMAS A. CLARK, Circuit Judge:
 
 
 1
 This case comes to us under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (hereinafter the "Act"). Petitioners, Mississippi Coast Marine, Inc. and its insurer, United States Fidelity & Guaranty Co. (hereinafter "Mississippi Coast"), appeal a decision of the Benefits Review Board which affirmed an award to claimant, Herman E. Bosarge, for several heart attacks, the first of which claimant experienced while employed by Mississippi Coast. Upon review of the record the decision of the Benefits Review Board is affirmed.
 
 
 2
 By way of synopsis, Bosarge suffered a heart attack while working as a marine carpenter in the repair of a thirty-foot pleasure boat at his employer's boatyard located on the waterfront. Appellant raises the following contentions: (1) Bosarge was not an "employee" under the Act because at the time of injury Bosarge was not engaged in "maritime employment" (status); (2) the Mississippi Coast boatyard is exempt from the Act because the overwhelming majority of its work was performed upon vessels under eighteen tons net (situs); and (3) the claimant's permanent total disability was not causally related to his injury while employed at the boatyard, or alternatively the amount of appellant's liability should have been apportioned in accordance with Section 8(f) of the Act, 33 U.S.C. § 908(f).
 
 
 3
 Mississippi Coast owns a facility in Gulfport, Mississippi, consisting of three acres of land bounded on the east and south by the Gulfport Small Craft Harbor, which has a channel leading into the Gulf of Mexico. Mississippi Coast's business involves the repair of vessels ranging in size from small pleasure craft to commercial shrimping boats weighing thirty tons and measuring sixty feet in length. Larger vessels are not serviced by Mississippi Coast, and the great majority of the repair work involves small pleasure craft.
 
 
 4
 Claimant, Herman E. Bosarge, was first employed by the petitioner in the fall of 1972 as a marine carpenter. Approximately seven months later, on April 21, 1973, Bosarge was injured while working on a wooden thirty-foot Chris Craft pleasure boat, which was resting on blocks to allow ready access from the employer's work yard. This particular boat had been blown ashore near the employer's facilities during a storm, and a mobile crane had been driven to retrieve it. The boat weighed approximately two tons.
 
 
 5
 On the day Bosarge suffered his injury, work had begun as usual at 7:00 o'clock in the morning. Approximately four hours later, while operating an electric screwdriver, Bosarge experienced a severe pain in the center of his chest. Claimant stopped work momentarily in order to rest, but the pain persisted until claimant decided to go home. When the chest pains continued throughout the afternoon, Bosarge contacted a physician, and was taken to a hospital where he remained for over one week with a diagnosis of myocardial infarction (an obstruction of blood circulation in the middle layer of the heart wall).
 
 
 6
 Bosarge returned to work for Mississippi Coast almost three months later, on July 16, 1973, and resumed his maritime carpentry work for three months before quitting his job. Claimant next worked for Sheppard Building Supply Company for about a month and subsequently worked seven months as a carpenter for contractor Bill Mosely. Each job paid a higher hourly wage than Mississippi Coast. Finally, Bosarge worked for L. P. Gollott for two months until the day of his second injury on January 11, 1975.
 
 
 7
 On Saturday, January 11 (twenty-two months after his first attack), Bosarge suffered a second heart attack. Claimant was immediately hospitalized and, since that time, has been unable to return to work. Furthermore, since the second injury Bosarge has experienced several other serious heart attacks.
 
 
 8
 Bosarge filed a claim for compensation seeking relief under the Act. The claimant was submitted to an administrative law judge who held a formal hearing and determined that (1) the claim was within the scope of the Act; (2) the disabling injury was causally related to the employment; (3) the claimant was an "employee" within the meaning of the Act at the time of injury; and (4) Section 8(f) was inapplicable to the case. The Benefits Review Board affirmed. We also affirm.
 
 I. THE ACT
 
 9
 Before turning to the merits of the case, it is helpful to review briefly the Act. In 1972 Congress amended the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) to extend coverage to a broader range of workers in an effort to remedy inconsistencies inherent in the Act as originally passed. The original 1927 Act was designed to provide worker's compensation to longshoremen and harbor workers injured during the course of employment, but, unfortunately, the 1927 Act created artificial distinctions which plagued admiralty courts for the next forty-five years. In 1969 the Supreme Court invited Congress to amend the Act after the Court was forced to hold that a longshoreman injured on a pier while attaching cargo to a ship's crane was not covered under the Act, even though he would have been covered had he fallen into the water rather than onto the land.[1]
 
 
 10
 The 1972 Amendments raised entirely new questions, however, some of which continue to foster confusion and uncertainty among those engaged in maritime work. Today we hope to lay to rest one of those questions in our holding that the amendatory provisions of the LHWCA are applicable to recreational boat builders and small pleasure craft marinas, even where the work is performed solely upon vessels under eighteen tons net.
 
 
 11
 The inquiry in determining whether an injury falls within the Act involves "situs"[2] and "status."[3] This circuit stated in Jacksonville Shipyards, Inc. v. Perdue, 539 F.2d 533, 538 (5th Cir. 1976):
 
 
 12
 (T)he general thrust of the new Act's coverage is clear. Congress has replaced the old "water's edge" analysis with a two-part test which requires (1) that the claimant have been engaged in "maritime employment" (status) and (2) that the injury have taken place upon the situs specified in the Act.
 
 
 13
 Therefore, in order to prevail in this suit, petitioners must establish either that the claimant's injury occurred at a site outside the statutory boundaries or that claimant was not engaged in "maritime employment."[4]
 
 
 14
 In considering the merits, we acknowledge that the Court of Appeals must sustain the Benefits Review Board's determination if it is supported by substantial evidence. Furthermore, it is appropriate for the court to construe remedial legislation "liberally in conformance with its purpose, and in such a way which avoids harsh and incongruous results."[5] The standard of review we apply is to "review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations."[6] Accordingly, we turn to the merits.
 
 II. STATUS
 
 15
 Appellant argues that claimant Bosarge was not a "maritime employee", and, therefore, that the Benefits Review Board committed an error of law in holding that claimant satisfied the requirements of 33 U.S.C. § 902(3). Appellant argues that at the time of injury Bosarge was not employed as a repairman of vessels and that there is no coverage under the holding in Jacksonville Shipyards, Inc. v. Perdue, 539 F.2d at 539. We disagree that the facts would support such an argument and thus find it unnecessary to consider the "time of injury argument."
 
 
 16
 Appellant also argues that, because claimant's general work activities were similar to those performed by land-based carpenters, claimant should not be classified as a "maritime employee." Petitioner reasons that because carpenters are not specifically mentioned in the Act, Bosarge should not be covered under the Act, being essentially a carpenter who performed work upon navigable vessels. But this circuit recently considered and rejected this argument in two cases, Odom Construction Co., Inc. v. United States Department of Labor, 622 F.2d 110 (5th Cir. 1980), and Trotti & Thompson v. Crawford, 631 F.2d 1214 (5th Cir. 1980), and today we echo their logic.[7]
 
 
 17
 Applying the reasoning of Odom and Trotti to the instant case, we conclude that Bosarge was engaged in "maritime employment" within the meaning of 33 U.S.C. § 902(3) while employed to repair vessels at petitioner's boatyard. The fact that his activities were in many respects similar to a carpenter who builds, for example, houses rather than vessels is irrelevant. The proper inquiries are whether Bosarge's activities had a "realistically significant relationship to traditional maritime activity"[8] or whether Bosarge's activities "directly furthered the shipbuilding goals of his employer."[9] It is difficult to conceive of an activity more fundamental to maritime employment than the building and repair of navigable vessels. Accordingly, we affirm the Benefits Review Board's "status" determination.
 
 III. SITUS
 
 18
 Petitioner also attacks the Benefits Review Board's determination that Mississippi Coast fell within the Act's jurisdiction on the ground that petitioner was outside the statutory "situs." To support its position, petitioner points to use of the terms "ship repairman, ship builder and ship breaker" in 33 U.S.C. § 902(3) and the situs exemption "in respect of the disability or death of (1) A master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net," in 33 U.S.C. § 903(a)(1) (emphasis added).
 
 
 19
 Relying on the terms "ship repairman, shipbuilder and shipbreaker," petitioner maintains that its operations are outside the Act's scope because petitioner repairs "boats" and not "ships." Relying on the "eighteen tons net" exemption, petitioner maintains that its operations are outside the Act's coverage because petitioner repaired vessels primarily under the eighteen tons net limitation. We disagree with both positions.
 
 
 20
 The "eighteen tons net" exemption applies only where employees also have been "engaged by the master;" they were not so engaged in the instant case. Applying fundamental principles of statutory construction, we must look to the plain meaning of the statute as evidence of Congressional intent. "The law is well settled that a statute must be interpreted according to its plain language unless a clear contrary legislative intention is shown." State of Alabama v. Marshall, 626 F.2d 366 (5th Cir. 1980). Where, as here, the size limitation "eighteen tons net" is preceded by the phrase "engaged by the master," we must construe the statute according to its plain meaning, and we conclude that the eighteen tons net limitation was meant to apply only to employees who were "engaged by the master." The exemption criteria are conjunctive, not disjunctive, and in order to qualify for the exemption, both conditions must be met. A person "engaged by the master" to repair a vessel over eighteen tons net would not be exempt, nor would a person engaged by someone other than the master to repair a vessel "under eighteen tons net." Therefore, the statutory language does not support appellant's argument that its boatyard is exempt from the Act's coverage because its work involves vessels under eighteen tons net.
 
 
 21
 In further support of this position, appellant argues that the terms "ship repairman, shipbuilder and shipbreaker" should be construed to exempt small craft marinas. The Longshoremen's and Harbor Workers' Compensation Act contains no express exemption for employers who operate small pleasure craft marinas or who repair "boats," as opposed to "ships." Therefore, in seeking to establish such an exemption, appellant must point to evidence that Congress intended to so exempt employees who work exclusively on small vessels. This is especially true where, as here, Congress has already provided an express exemption.[10] Under principles of statutory construction, the existence of an explicit exemption covering certain acts is evidence that Congress did not intend to grant immunity to other acts not covered by the explicit exemptions.[11]
 
 
 22
 In an effort to determine the validity of Mississippi Coast's position, the statutory language must be our starting point. We note that neither "ship" nor "boat" is defined in the Act, a fact which vitiates appellant's position that Congress intended to distinguish between "boat" repairmen and "ship" repairmen. The term "vessel" is, however, defined at 33 U.S.C. § 902(21):
 
 
 23
 The term "vessel" means any vessel upon which or in connection with which any person entitled to benefit under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.
 
 
 24
 A weight limitation is conspicuously absent from this definition, and, had Congress intended to exempt employees who built and repaired vessels under a certain size, this would have been a logical place to have so stated.
 
 
 25
 Looking further to the legislative history of the Act, the House and committee reports contain no mention of an exemption for small marina employees. Rather, the legislative history uses the term "vessel," making no distinction between "ships" and "boats." Furthermore, the Committee Report takes an expansive view of the 1972 Amendments:
 
 
 26
 The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered by this Act for part of their activity. To take a typical example, cargo, whether in break bulk or containerized form, is typically unloaded from the ship and immediately transported to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters. The employees who perform this work would be covered under the bill for injuries sustained by them over the navigable waters or on the adjoining land area. The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity.[12]
 
 
 27
 Taking the inverse of the last sentence above, employees who are "engaged in loading, unloading, repairing, or building a vessel" would be covered by the Act, and claimant Bosarge was indisputably engaged in repairing a vessel at the time of his injury.
 
 
 28
 In questions of statutory interpretation, this court is required to give substantial deference to the interpretations of the administrative body charged with responsibility for applying the Act, and the Benefits Review Board has held that the Act should apply to vessels irrespective of size distinctions. Napoles v. Donzi Marine, Inc., 5 BRBS 685, BRB No. 76-262 (April 6, 1977). In Napoles an analogous argument was made to the Board by a manufacturer of small boats and pleasure craft. The employer argued that the claimant was not a statutory employee because he built small boats rather than ships. The Board rejected the argument:
 
 
 29
 Neither the size of the vessel nor its designation as ship, boat or otherwise, play any part in our decision. The sole criterion for coverage is a determination as to whether at the particular operation involved there are employees engaged in construction of a vessel over navigable waters, as defined prior to the 1972 Amendments or in dry dock, building way or marine railway. If an employee is so engaged, all employees engaged in vessel construction, on any adjoining pier, wharf, terminal or other adjoining area are to be covered.
 
 
 30
 Napoles, supra, at 698.
 
 
 31
 In light of this analysis we agree that the Benefits Review Board's finding that petitioner's boatyard fell within the "situs" requirement of the Act is supported by substantial evidence, is in accordance with canons of statutory construction, and is not an error of law. The Board was correct in finding that claimant Herman E. Bosarge fulfilled the status requirements as an "employee" under 33 U.S.C. § 902(3), and that Mississippi Coast Marine, Inc. falls within the situs jurisdiction of 33 U.S.C. § 903(a)(1).
 
 
 32
 IV. ONE INJURY OR TWO?
 
 
 33
 Having concluded that the Board was correct in affirming the ALJ's decision that Bosarge was an "employee" and that his claim fell within the scope of the Act, we turn to the issue of whether Bosarge's later heart attacks were causally related to his first heart attack. The ALJ found that they were, and the Board affirmed that finding. We also affirm.
 
 
 34
 The ALJ found that the claimant's successive heart attacks were caused by his employment with petitioner. A subsequent injury is compensable if it is the direct and natural result of a compensable primary injury, as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause. Although appellant relies upon the testimony of its medical witness, Dr. Justice, for the position that the second heart attack bore no relation to the first, the medical reports of claimant's treating physician, Dr. Wansley, directly supported the ALJ's finding of causal relation. Despite petitioner's argument that liability should be placed upon Bosarge's subsequent employers, the Board found no evidence establishing a causal connection between the subsequent employment and claimant's later attacks. Accordingly, we find the Board's position to be supported by substantial evidence.[13]
 
 
 35
 The final, alternative position argued by appellant is that, should Mississippi Coast be found liable on all of the above grounds, its liability should be nevertheless limited by the "second injury" provision in 33 U.S.C. § 908(f).[14] This section was designed to prevent discrimination against handicapped workers by limiting the liability of an employer who hires a handicapped worker with knowledge of his disability in the event that the employee subsequently suffers a work-related aggravation of his disability. Because he retained the claimant in his employ after claimant's first heart attack, the employer argues that he qualifies for the limitation of liability permitted by this section. The argument advanced is that retention of a disabled employee after injury is equivalent to employing a disabled person. The employer cites for support of this doctrine C & P Telephone Co. v. Director, Office of Workers' Compensation Programs, 564 F.2d 503, 512 (D.C.Cir.1977). While we might very well agree with the opinion of the District of Columbia Circuit in that case if the issue were before us, the facts of this case do not make the doctrine applicable, and petitioner's argument is more sleight of hand than substance.
 
 
 36
 In the C & P Telephone Co. case Mrs. Glover had a chronic back ailment, unrelated to her work, which caused her considerable absenteeism from her job. This disability was well known to her employer. While on the job she sustained a further disabling injury to her back, and the District of Columbia Circuit held that § 908(f) should apply because the same rule that spares an employer who hires a disabled worker should relieve an employer who retains a disabled employee.
 
 
 37
 The employer argues here that he retained Bosarge in his employ and that Bosarge later quit and had his second heart attack while engaged in other employment. The argument is that had Bosarge continued to work for Mississippi Coast Marine and there sustained the second heart attack, the second disability rule would apply. That the rule does not apply here is obvious on its face. Bosarge had no disability when he sustained his first heart attack, which is the causative factor requiring compensation under the Act as we have previously stated. For the so-called "second injury" rule to apply the employee's existing partial disability must obviously be unrelated to his work during the course of his employment with the employer against whom he claims. To accept Mississippi Coast Marine's view, we would be permitting every employer who retained an employee after a job-related injury to escape full liability for that injury if subsequent events establish that the injury was permanently and totally disabling. Obviously this is not the intent of the "second injury" rule. Bosarge was not already disabled when he sustained the compensable heart attack on April 21, 1973.
 
 
 38
 For the reasons that have been set forth, the order of the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969)
 
 
 [2]
 33 U.S.C. § 903(a) (situs):
 (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). No compensation shall be payable in respect of the disability or death of
 (1) A master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net ....
 
 
 [3]
 33 U.S.C. § 902(3) (status):
 (3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
 
 
 [4]
 See also P. C. Pfeiffer Co., Inc. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979)
 
 
 [5]
 Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953)
 
 
 [6]
 Presley v. Tinsley Maintenance Service, 529 F.2d 433, 436 (5th Cir. 1976)
 
 
 [7]
 In Odom the employer argued that the claimant was a construction worker, not a "maritime employee." The court rejected the argument:
 Odom argues that Maze is not a covered "employee" both because moving the concrete blocks was not maritime work and because the great majority of Maze's work for Odom was indisputably non-maritime. We reject both arguments.
 ... Relocating the blocks after they had fallen or slipped into the water from erosion is not the type of job peripherally related to maritime matters that Congress said was not to be covered by the LHWCA, such as trans-shipment of stored cargo or clerical work. (Citations omitted.) On the facts before us, where the job being done clearly had "a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters' ...," Weyerhaeuser Co. v. Gilmore, 528 F.2d 957, 961 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976) (citations omitted), Maze's work at the time of his injury was maritime.
 622 F.2d at 112-13.
 
 
 [8]
 Weyerhaeuser Co. v. Gilmore, 528 F.2d 957, 961 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976)
 
 
 [9]
 Trotti & Thompson, supra at 1220
 
 
 [10]
 The legislative history emphasizes this exemption:
 The present definition (pre-1972 Amendments) merely excludes from the definition of "employee" a master or member of a crew, or any person engaged by the master to load, unload, or repair any small vessel. The new subsection retains this exclusion and states that the term includes any employee engaged in maritime employment, any longshoreman or other person engaged in longshoring operations, and any harborworker (including any ship repairman, shipbuilder, and shipbreaker).
 H.R.Rep.92-1441, reprinted in (1972) U.S.Code Cong. & Ad.News, pp. 4698, 4711.
 
 
 [11]
 Midland Telecasting Co. v. Medissa Television Co., 617 F.2d 1141, 1145, n. 7 (5th Cir. 1980)
 
 
 [12]
 H.R.Rep.1441, supra note 10, U.S.Code Cong. & Ad.News 1972, at 4708
 
 
 [13]
 The findings of the administrative tribunal in cases under the Act are not to be disturbed unless they are unsupported by substantial evidence on the record considered as a whole, and in making this determination, the policy of the Act that all doubtful questions are to be resolved in favor of the claimant, is to be considered
 Cooper Stevedoring of La., Inc. v. Washington, 556 F.2d 268, 275 (5th Cir. 1977).
 
 
 [14]
 33 U.S.C. § 908(f) (1976):
 (f) Injury increasing disability:
 (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subdivision (c)(1)-(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. In all other cases of total permanent disability or of death, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.
 In all other cases in which the employee has a permanent partial disability, not found to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation for one hundred and four weeks only.
 (2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.