**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,**
Petitioner,

v.

**Sam A. HOWARD; Director, Office of Workers Compensation Program, United States Department of Labor, Respondents.**

No. 89–1060.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1990.
Decided May 29, 1990.

Lawrence Philip Postol, Seyfarth, Shaw, Fairweather & Geraldson (James Mesnard,

Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., on brief), for petitioner.

Mark S. Flynn, U.S. Dept. of Labor (Robert P. Davis, Sol. of Labor, Allen H. Feldman, Associate Sol., Charles I. Hadden, Deputy Associate Sol., U.S. Dept. of Labor, Washington, D.C., on brief), for respondents.

Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.

PHILLIPS, Circuit Judge:

Newport News Shipbuilding & Dry Dock Co. (Newport News) has petitioned for review of the Benefits Review Board's decision and order modifying the Administrative Law Judge's benefits award to Sam A. Howard under the Longshore and Harbor Workers' Compensation Act (LHWCA), as amended, 33 U.S.C. §§ 901 *et seq.* The BRB, adopting the Director's interpretation of 33 U.S.C. § 908(f) (hereinafter § 8(f)) of the LHWCA, held that the ALJ had erroneously failed to find Newport News liable for 104 weeks of Howard's permanent total disability benefits award. We affirm.

I

The facts as found by the ALJ are undisputed. Sam A. Howard, a fifty-two year old shipyard worker, was a Newport News employee from 1963–1985. Between 1973 and 1979, Howard developed arthritis and suffered a series of on-the-job back injuries. After his 1979 back injury, Howard sought and was awarded compensation for a permanent partial disability based on lost overtime earnings and permanent work restrictions. In turn, the BRB had then granted Newport News' requested § 8(f) relief. Section 8(f) of the LHWCA entitles the employer to relief from a Special Fund set up pursuant to the LHWCA if the following factors are present: (1) there must be an extant permanent partial disability; (2) such disability must be manifest to the

employer; and (3) any disability that exists after a work-related injury must not be due solely to the work-related injury, but must be a combination of both the injury and the extant permanent partial disability. *See General Dynamics Corp. v. Sacchetti,* 681 F.2d 37, 39–40 (1st Cir.1982). Under Howard's particular circumstances following the 1979 back injury, § 8(f) imposed upon the employer liability for only the first 104 weeks of compensation, after which compensation liability shifted to the Special Fund. Accordingly, Howard was then awarded permanent partial disability compensation of $17.46 per week and Newport News was held entitled to § 8(f) relief after it paid the first 104 weeks of compensation.

In October 1982, Howard developed carpal tunnel syndrome which rendered him unable to use his hands. Pursuant to its policy, Newport News assigned Howard to its MRA shop where convalescing employees performed light duties. Two years later, Newport News found Howard to be permanently and totally disabled and, pursuant to its policy, discharged Howard, whereupon Howard filed the benefits claim that is the subject of this appeal.

At the hearing on Howard's claim, the ALJ found Howard permanently totally disabled, found § 8(f) applicable, and awarded compensation of $248.24 per week. Additionally, the ALJ imposed immediate liability on the § 8(f) Special Fund without imposing 104 weeks of payment upon Newport News. The ALJ, relying on *Huneycutt v. Newport News Shipbuilding & Dry Dock Co.,* 17 BRBS 142 (1985), interpreted § 8(f) to limit employer liability to only one 104–week period of liability per employee. In *Huneycutt,* a claimant with a pre-existing disease was found permanently partially disabled by asbestosis for which the employer incurred a § 8(f) 104–week liability period.[1] The asbestosis worsened and ultimately, when combined with a pre-existing heart disease, rendered the claimant permanently totally disabled. In ruling that the claimant's employer was not liable

---

1. The BRB in *Huneycutt* remanded the ALJ's finding that § 8(f) applied to the permanent partial disability. Apparently, the ALJ had failed to expressly find that a pre-existing heart disease had combined with the permanent partial disability to result in a greater degree of permanent partial disability.

for another 104 weeks of liability, the *Huneycutt* Board held that, "in cases where permanent partial disability is followed by permanent total disability and § 8(f) is applicable to both periods of disability, [the] employer is liable for only one period of 104-weeks." *Huneycutt*, 17 BRBS at 143.

On motion for reconsideration of the ALJ's decision holding the Special Fund immediately liable for Howard's disability compensation, the Director argued that *Huneycutt* was inapposite; the ALJ should instead have applied *Cooper v. Newport News Shipbuilding & Dry Dock Co.*, 18 BRBS 284 (1984). *Cooper* imposed employer liability for two § 8(f) 104-week periods where "the subsequent total disability [was] caused by a new distinct traumatic injury." *Cooper*, 18 BRBS at 286 (claimant's permanent *partial* disability precipitated by asbestosis; permanent *total* disability precipitated by a totally unrelated back injury).

In denying reconsideration and reaffirming *Huneycutt*'s applicability, the ALJ noted that, but for the arthritis and the 1979 back injury, Howard's carpal tunnel syndrome would not, by itself, have rendered Howard totally disabled. That is, if Howard had only suffered back injuries and arthritis, he could use his hands and would only be partially disabled. Similarly, if Howard had only suffered from carpal tunnel syndrome, there would have been shipyard work available, again leaving him only partially disabled. Howard's total disability was total only because of the synergy between the two partial disabilities. Consequently, the "total disability was not 'caused by a new traumatic injury.'" J.A. at 16 (quoting *Cooper*, 18 BRBS at 286).

On appeal, the BRB, upholding the ALJ's factfinding, nevertheless held that the ALJ misconstrued *Huneycutt* and *Cooper*. Implicit in the BRB's holding was that *Cooper* and *Huneycutt* together stand for the proposition that it is the relatedness of the first injury to a subsequent one, rather than the relatedness of discrete injuries to the ultimate finding of total disability, that determines whether another 104-week lia-

bility period is triggered. Accordingly, because Howard's back injuries and arthritis were totally unrelated to his carpal tunnel syndrome, § 8(f) required imposition of a new 104-week period of compensation upon Newport News.

II

As we understand it, Newport News makes basically two arguments in this court. First, Newport News argues that, as a matter of law, once an employer has been subjected to a 104-week period of liability under § 8(f), the employer is forever absolved from any further liability for another 104-week period. Alternatively, even if multiple workplace injuries can result in multiple 104-week liability periods, because the same pre-existing condition and injury contributed to both compensation awards, the ALJ properly applied *Huneycutt* to limit Newport News' liability to one 104-week period.

The proper interpretation of § 8(f) in this respect appears to be one of first impression.

A

■ The Director urges this court to adopt the BRB's interpretation of § 8(f). Although the BRB's interpretation is not, by itself, entitled to any special deference by the courts, *see Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514, n. 18, 66 L.Ed.2d 446 (1980), because the Director heads the agency that administers and sets policy under the LHWCA, *see* 33 U.S.C. § 939(a) ( & Supp.); 20 C.F.R. § 701.202, our decision whether to adopt the Director's interpretation, which adopts the BRB interpretation, is guided by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Lukman v. Director, OWCP*, 896 F.2d 1248, 1251 (10th Cir.1990) (applying *Chevron* analysis to the Director's interpretation of the LHWCA as applied to a claim for black lung benefits).[2]

2. We reject as unsupported Newport News' argument that, because the Director is charged

Under the BRB's interpretation of § 8(f) an employer incurs liability for a single 104–week liability period for all disability arising out of the same injury or occupational disease. Conversely, an employer may incur liability for multiple 104–week liability periods when a subsequent injury is new and distinct from an earlier injury.

■ In assessing the Director's interpretation of § 8(f), two questions confront us as the reviewing court. First, always, we must ask whether Congress has directly addressed the precise issue in dispute. *See Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. If congressional intent is clear, that ends the inquiry; the court and the agency must give effect to unambiguously expressed congressional intent. *See id.* at 842–43, 104 S.Ct. at 2781–82. Conversely, if the court determines that Congress has not addressed the precise question at issue, the court must then ask whether the agency's interpretation is based on a permissible construction of the statute. *See id.* at 843, 104 S.Ct. at 2781–82. If so, the court may not substitute its own construction of a statutory provision for a reasonable one made by an agency. *See id.*

### (1)

■ We turn first to the plain language of § 8(f) to determine whether the statute expressly addresses the precise issue in dispute, namely, employer liability for multiple 104–week liability periods. The first sentence of § 8(f) provides that "[i]n any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to *that* injury." Section 8(f) (emphasis supplied). This sentence is clearly intended to limit employer liability to as much of a work-related injury as is not synergistically aggravated by extant disability. For example, if an employer had hired a worker who was blind in one eye, and the worker later lost his good eye to a

work-related injury, § 8(f)'s first sentence requires limitation of the employer's liability to the disability resulting from loss of one eye, not to that resulting from total blindness caused by the loss of the good eye.

The next two sentences of § 8(f) deal respectively with scheduled and unscheduled injuries resulting in total disability. The second sentence of § 8(f) imposes liability for permanent total disability "following an injury falling within the provisions of subsection (c)(1)–(20) of this section [scheduling specific types of injuries]." The third sentence of § 8(f), dealing with cases of permanent total disability caused by injuries other than those scheduled in § 8(c)(1)–(20), states that in those

other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments ... for one hundred and four weeks only.

Section 8(f).[3]

Both Newport News and the Director argue that the plain language of § 8(f) set forth above supports their respective positions. Newport News emphasizes the statutory provision that "the employer shall provide ... compensation for one hundred and four weeks *only.*" Section 8(f) (emphasis added). The word "only," argues Newport News, clearly limits employer liability to only one 104–week compensation period, regardless of the number or unrelatedness of the causal injuries. Conversely, the Director emphasizes the statutory provision requiring that the employer shall provide compensation "[i]n all other cases of total permanent disability or of death, found not to be due solely to *that* injury." *Id.* (emphasis added). The reference to "*that* injury," argues the Director, clearly contemplates that employer liability

---

with representing the fund, the Director's adversary position obviates any deference due under *Chevron*.

3. The final two sentences in § 8(f) deal respectively with scheduled and unscheduled injuries resulting *only* in permanent *partial* disability. Each of these also limits employer liability to 104 weeks.

is triggered anew any time there is a qualifying § 8(f) injury.

Notwithstanding the parties' contentions, we find that neither the statute on its face nor its relevant history sheds dispositive light on the proper resolution of the multiple-injury problem at issue here. We therefore turn to *Chevron*'s second inquiry, which requires us to determine whether the Director's interpretation of § 8(f) is a reasonable one.

### (2)

■ As a preliminary matter, we underscore the scope of our review. The question before this court is not whether, in our view, multiple 104–week liability periods are inappropriate in the general context of a program designed to encourage employment of the handicapped. Rather, our inquiry is limited to whether the Director's interpretation that multiple 104–week liability periods may be appropriate under § 8(f) is a reasonable one.

Section 8(f) limits liability for employers of disabled workers to the extent disability awards are based on workplace injuries that, but for the disability, would have been less severe. *See Maryland Shipbuilding & Drydock Co. v. Director, OWCP*, 618 F.2d 1082, 1084 (4th Cir.1980). As noted earlier, this protection is accomplished by means of the Special Fund; when an employee suffers an unscheduled § 8(f) injury, the employer's liability for permanent benefits is limited to 104 weeks. The goal of the statute is to reduce the disincentives to hire the handicapped. *Id.* Newport News argues that the Director's interpretation frustrates the goal of handicapped employment; having hired a handicapped worker whose injury exposes the employer to 104 weeks of liability, the specter of another 104–week liability period triggered by an unrelated injury would create an incentive to fire the handicapped worker after the first injury.

Although Newport News' incentive argument has superficial appeal, it certainly is not conclusive on the interpretive issue. The record is devoid of any evidence suggesting that multiple-injury liability would

in any way increase the incidence of employee firings after a first § 8(f) injury. Indeed, the compensation scheme is set up to minimize employer liability for multiple injuries by rendering the employer liable only for the marginal decrease in earning capacity caused by the discrete injury rather than the total decrease in earning capacity. *See* 33 U.S.C. §§ 908(c)(19) & (21); *White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987). Moreover, it is not even clear that an employer could legally fire such an employee. *See* 33 U.S.C. § 948a ("It shall be unlawful for any employer ... to discharge or ... discriminate against an employee ... because such employee has claimed ... compensation from [his] employer.").

Even if the Director's interpretation may be thought to threaten the congressional purpose to promote employment of the handicapped, account must also be taken of the parallel congressional concern with workplace safety that is reflected in the overall statutory scheme. *See* 33 U.S.C. § 941(a). Section 8(f) expressly requires the employer to bear liability to the extent a workplace injury is in no way synergistically affected by the extant handicap, giving recourse to the Special Fund only where the post-injury disability is not "due solely to that [workplace] injury." Section 8(f). *See John T. Clark & Son of Md., Inc. v. Benefits Review Bd.*, 621 F.2d 93, 95 n. 2 (4th Cir.1980). The purpose to encourage workplace safety is manifest in these provisions, and the Director's interpretation obviously furthers that purpose.

In any event, *Chevron* warns against our undertaking a balance of competing policy goals by way of coming up with our own interpretation. Our function is simply to determine whether the balance struck by the Director embodies a reasonable interpretation of statutory provisions whose intended meaning is by no means plain. Lacking plain guidance from Congress, we cannot say as a matter of law that the Director's interpretation under which a 104–week liability period per discrete injury may be imposed on employers is unreasonable. Accordingly, we adopt the Director's

interpretation of § 8(f) under which a new 104–week liability period may, in appropriate circumstances, be imposed for more than one of successive workplace injuries.

## III

We turn now to Newport News' final argument to the effect that, even if an employer can in some situations incur multiple liability awards for multiple employee injuries under § 8(f), in cases such as the instant one where the same injury contributes to both compensation awards, the employer is liable for only one 104–week period of liability.

The argument can be recast as follows. It is undisputed that neither the back injuries and arthritis, nor the carpal tunnel syndrome alone would have rendered Howard permanently disabled. Howard's disability was total rather than partial only because of the pre–1979 back injuries and arthritis for which Newport News had already paid 104 weeks of compensation. Another 104–week liability period would therefore impose duplicative liability for the 1979 back injury. Put another way, although the Director's interpretation focuses on the causal relationship between an earlier and a later injury, Newport News' interpretation focuses on the relationship between an earlier workplace injury and the quantum of disability following a later workplace injury; if the earlier injury for which an employer incurred 104 weeks of liability affects the quantum of disability following a later injury, then the employer is absolved from another 104–week liability period.

Applying *Chevron*, we cannot say that the Director's interpretation is unreasonable in its rejection of this argument. Although in a sense Newport News is paying twice for the 1979 back injury, it is also true that, had Howard suffered both injuries simultaneously, Newport News would have incurred 104 weeks of liability based on the total disability.[4] Moreover, to the extent Newport News' argument is fueled

by fears of duplicative recovery, 33 U.S.C. § 908(c) measures the disability award based upon the difference between the employee's earnings immediately before the latest injury over the employee's earnings immediately after the latest injury. *See White*, 812 F.2d at 35. Therefore, to the extent Howard's pre-carpal tunnel syndrome salary reflected his earlier back injury, Newport News' fear of duplicative benefit awards is largely unfounded.

As before, we are simply confronted with two competing views of the proper weight to be given conflicting policy goals. Lacking dispositive statutory direction, *Chevron* requires us to defer to the Director's reasonable interpretation. In light of this, we find nothing manifestly unreasonable in the Director's interpretation imposing a new liability period for each new discrete injury. Accordingly, we affirm the BRB's order modifying the ALJ's immediate imposition of liability on the Special Fund, and imposing upon Newport News liability for 104 weeks of disability benefits.

AFFIRMED.

---

4. Additionally, if Howard had gone to work for another employer after the 1979 back injury, and there developed carpal tunnel syndrome, the second employer would have incurred 104 weeks of disability. *See Cooper*, 18 BRBS at 286 n. 2.